Dear Mr. Anderson:
This office is in receipt of your request for an opinion of the Attorney General in regard to the Airport Authority created by the City of Hammond. You ask the following questions:
 1) Can the Authority Commissioners select and appoint an Airport Manager, or must this personnel action be taken through the Mayor (recommendation) and the City Council (approval);
 2) If the Authority Commissioners do employ an airport manager under the provisions of LSA-R.S. 2:603(C), who is responsible for his/her salary, the City of Hammond or the Airport Authority;
 3) Under Hammond's Home Rule Charter form of government, is such an Airport Manager a de facto department head, under the control and supervision of the Mayor; and
 4) What, if any, are the financial obligations of the City of Hammond to the Airport Authority.
In accordance with R.S. 2:602 the governing body of the subdivision may by resolution create a public body to be known as an airport authority; or they may submit the proposition of creating an airport authority to the electorate, and with a favorable vote must create such an authority. The power of each authority shall be vested in five persons to be appointed as commissioners. Under R.S. 2:603(C) the airport authority is given the power to "employ an * * * airport manager * * * and such other officers, agents and employees, permanent and temporary, as it may require, and shall determine their qualifications, duties and compensation."
In the Home Rule Charter Section 3-07 the mayor is recognized as the chief executive officer of the city and among his powers is the power to appoint, suspend or remove for just cause all city employees and appointive administrative officers "provided for, by or under this charter, except as otherwise provided bylaw, this charter, civil service or other personnel rules adopted pursuant to this charter".
In answer to your first question, we find based upon the statutory provisions and the charter, that as is provided by law the Airport Authority Commissioners appoint the airport manager without the requirement of a recommendation of the Mayor or approval of the governing body.
In regard to the second question when reading the statutory provisions as a whole, we must conclude that the Airport Authority is responsible for the salary of the airport manager. As stated above, the commissioners are given the power to employ those they deem necessary and to determine the qualifications, duties and "compensation" of the employees, and the power of each authority is vested in the commissioners, R.S. 2:602. R.S. 2:604, in setting forth the general powers of the authority, although not limiting them to those listed, includes the power to exercise all or any portion of the administrative powers, functions and authority relative to airports vested in the governing body of the subdivision. R.S. 2:609 covers those things that a subdivision may do in which an airport authority has been created for the purpose of aiding and cooperating in the operations of the airport, and among others specified is to lend or donate money to the authority, provide that all funds to be used by the subdivision for the airport be paid directly to the airport authority, or they may enter into agreements with the authority with respect to action to be taken by them. This office has concluded that Airport Authorities have the power to incur debt and contract obligations and are responsible for their own debts, and we find nothing to require that the governing authority pay the employees unless they agree to guarantee the debts or help subsidize the authority.
Based upon the reasoning stated above in answer to your last two questions, we must conclude that the airport authority is not a department of the city government whereby the manager is a de facto department head under the control and supervision of the mayor, nor is there any financial obligation of the City to the authority, unless entering into an agreement for the purpose of aiding and cooperating in operation of the airport. The legislature has delegated to the governing authority the power to create "a public body" to govern the airport. This is not legislation which affects the power and structure under the home rule charter, but if the governing authority avails itself of the power to establish a airport authority, the statutory provisions are relevant.
We hope this sufficiently answers your inquiries, but if we can be of further assistance, do not hesitate to contact us.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 BY: BARBARA B. RUTLEDGE Assistant Attorney General
BBR